IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEVEN R. LOWE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-10-242-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Steven R. Lowe requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born July 23, 1960, and was forty-seven years old at the time of the administrative hearing (Tr. 21). He completed the eleventh grade (Tr. 22), and has worked as a millwright, construction laborer, carpenter, sider, and painter (Tr. 58). The claimant alleges that he has been unable to work since November 23, 2001 due to a back injury, injured right ankle, arthritis, unstable potassium levels, and inability to work in the heat. (Tr. 127).

## Procedural History

On November 1, 2005, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Edward L. Thompson conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 8, 2008 (Tr. 12-17). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform the full range of medium work, *see* 20 C.F.R. § 404.1567(c), 416.967(c). (Tr. 15). The ALJ concluded that the claimant was not disabled because he could return to his past work as a carpenter, sider, or painter (Tr. 16).

## Review

The claimant contends the ALJ committed reversible error at step two by failing to properly evaluate his mental impairments and account for them in formulating his RFC at step four.  The Court agrees; the Commissioner's decision must accordingly be reversed.

On May 21, 2001, Dr. Ronald Woods saw the claimant for a neurological consult, and noted that his past history was significant for depression with panic disorder.  During that visit, the claimant denied suicidal or homicidal ideations, but Dr. Woods noted that the claimant was "certainly depressed about losing his job."  (Tr. 203, 212).  In March 2001, the claimant saw Dr. Woods for a follow-up exam, reporting that he was "doing extremely well" on Zoloft and that he felt it made a difference for him, although he had also been experiencing some insomnia.  (Tr. 211).  On June 25, 2001, the claimant again saw Dr. Woods with complaints of, inter alia, depression and insomnia, and Dr. Woods continued the claimant on medications, including Zoloft.  (Tr. 206).  In October 2002, the claimant was admitted to the hospital with a severe potassium deficit.  Following that admission, the claimant was prescribed Xanax for anxiety.  (Tr. 222).  In January 2006, the claimant saw a state examining physician who made no specific evaluation as to the claimant's depression, but noted that the claimant denied mood swings, delusions, or hallucinations.  (Tr. 264).  Dr. James Talley completed a Physical RFC Assessment of the claimant, diagnosed him with lumbosacral plexus legions with a guarded prognosis, and indicated that emotional factors and the psychological conditions of depression and anxiety contributed to the severity of the claimant's symptoms and functional limitations.  (Tr. 186).

At the administrative hearing the claimant testified that he was not under the care of a primary physician because he had no insurance and could not afford a doctor, and as a result, he only took over-the-counter medication. (Tr. 32-33). The claimant's wife testified that the claimant suffered from depression. The ALJ said that was something he had not "heard before," and the claimant's wife stated that a better description might be "frustration." (Tr. 46-47). The claimant's attorney then questioned the claimant as to his depression. He stated that the Zoloft helped him "[s]omewhat. But after the insurance was all gone and I didn't work for them people no more, I couldn't go see [Dr. Wood] no more, so I didn't take them no more." (Tr. 52). The ALJ asked the claimant if he was aware that Zoloft could be used not just for depression but also as a sleep aid, and the claimant stated he was unaware of that. (Tr. 53). The claimant also testified that he was not sure what diagnosis led Dr. Wood to prescribe the Zoloft, but agreed that none of his physicians had placed mental restrictions on his ability to work. (Tr. 57).

"Where there is evidence of a mental impairment that allegedly prevents a claimant from working, the [ALJ] must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure accordingly." *Cruse v. U.S. Department of Health & Human Services*, 49 F.3d 614, 617 (10th Cir. 1995), *citing Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048 (10th Cir. 1993). To apply the special "psychological review technique" (PRT), the ALJ must first evaluate whether the claimant has a "medically determinable mental impairment," 20 C.F.R. § 404.1520a(b)(1), and then determine the degree of function the claimant has lost as a result of the impairment by assessing his level of

-5-

functioning in four specific areas.  *See Cruse*, 49 F.3d at 617.  The four areas are:  (i) activities of daily living; (ii) social functioning; (iii) concentration, persistence, or pace; and, (iv) episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(d)(2).  Furthermore, the ALJ must specifically document his PRT findings.  *See Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) ("[T]here must be competent evidence in the record to support the conclusions recorded on the [PRT] form and the ALJ must discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form."), *quoting Woody v. Secretary of Health and Human Services*, 859 F.2d 1156, 1159 (3d Cir. 1988).  *See also* 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4) ("At the administrative law judge hearing [level], the written decision must incorporate the pertinent findings and conclusions based on the technique.  The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)").

    As discussed above, there clearly was evidence in this case indicating the claimant suffered from a mental impairment, *i. e.*, depression.  The ALJ was therefore required to determine the claimant's degree of functioning in the above-discussed broad areas and to document his findings in this regard.  Instead, the ALJ simply concluded:  "The claimant has no severe mental impairment, as he has no mental impairment that has been treated by a mental health professional. The medical record indicates that the claimant has received a prescription for Zoloft but there is nothing in the record to indicate that any depressive symptoms were not fully controlled with the use of the medication." (Tr. 15).

As the above-discussed authorities reflect, such analysis by the ALJ of the claimant's mental impairment was legally defective. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 883 (10th Cir. 2010) ("[T]he regulations set out exactly how an ALJ is to determine severity, and consideration of the amount of treatment received by a claimant does not play a role in that determination. This is because the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations. Further, attempting to require treatment as a precondition for disability would clearly undermine the use of consultative examinations.  Thus, the ALJ failed to follow the regulations in reaching her determination that Ms. Grotendorst's mental limitations were not severe at step two of the sequential evaluation.").

The ALJ did, however, find that the claimant suffered from severe impairments of degenerative disc disease and hand and knee pain (Tr.14).  Under such circumstances, the failure to find the claimant' mental impairment severe as step two would ordinarily be harmless error because the ALJ would nevertheless be required to consider effects of the mental impairment and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].  Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004), *quoting* 20 C.F.R.

§ 404.1523).  *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two.  His failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].  But here the error *was not* harmless, because the ALJ neither evaluated the severity of the claimant's mental limitations nor accounted for them in assessing his RFC.  *See Grotendorst*, 370 Fed. Appx. at 884 ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Gtotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error.").

  The ALJ failed to properly apply the PRT analysis at step two and subsequently failed to properly assess the claimant's RFC at step four.  Consequently the decision of the Commissioner must be reversed and the case remanded for a proper analysis of the claimant's RFC by the ALJ.  If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

  In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 20th day of September, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma